An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-736

Filed 1 April 2026

Bertie County, Nos. 19CR000336-070, 19CR000337-070, 19CR000340-070, 19CR050088-070, 19CR050089-070

STATE OF NORTH CAROLINA

v.

DENZEL LAMONT EVANS & KEH-LYL LITTLEJOHN, Defendants.

Appeal by Defendants from judgments entered 1 August 2024 by Judge Cy A. Grant, Sr., in Bertie County Superior Court. Heard in the Court of Appeals 24 February 2026.

*Attorney General Jeff Jackson, by Assistant Attorney General Madison L. Beveridge and Special Deputy Attorney General Sage A. Boyd, for the State.*

*Appellate Defender Glenn Gerding, by Assistant Appellate Defender Emily Holmes Davis, for Defendant Denzel Lamont Evans.*

*Shawn R. Evans for Defendant Keh-lyl Littlejohn.*

GRIFFIN, Judge.

Defendants Denzel Lamont Evans and Keh-lyl Littlejohn each appeal from the trial court's judgments entered upon jury verdicts finding them guilty of crimes charged for their participation in a drive-by shooting. Defendant Evans contends the

trial court erred by convicting him of felon in possession of a firearm because the underlying statute is unconstitutional. Because this Court has affirmed the constitutionality of the statute and Defendant Evans failed to preserve this argument for our review, we dismiss his appeal. Defendant Littlejohn contends the trial court erred by denying his motion to dismiss the charge of conspiracy because the State's evidence was insufficient. We hold the trial court did not err in entering judgment against Defendant Littlejohn.

## I. Factual and Procedural Background

On 27 February 2019, Lloyd Cooper was in the bathroom of his home in Windsor, North Carolina, when he heard gunshots followed by the sound of bullets hitting his home and the three vehicles in his driveway. When the gunshots ceased, Cooper looked out a window and saw a grey Mitsubishi Galant speed away from his home. Cooper called 911.

Around five minutes after receiving a dispatch report of the shooting, an officer stopped a grey Mitsubishi Galant about five miles away from Cooper's home. Defendant Evans, Defendant Littlejohn, and a man named Richard Armstead were inside the vehicle at the time. Defendant Evans was wearing a GPS ankle monitor. Records obtained from Defendant Evans's ankle monitor revealed that, shortly before the officer stopped his vehicle, Defendant Evans was located outside of Cooper's home for approximately one minute, then traveled a constant, traceable path from Cooper's home to the location of the stop. The officer searched the Mitsubishi Galant and

discovered leftover 223-caliber bullet casings throughout the vehicle, as well as an AK-47 type rifle, an M-16 type rifle, a Fabrique Nationale handgun, and a 9 mm Baretta handgun. The officer also found over 7.5 grams of cocaine and three bags of suspected marijuana in the vehicle.

Bullet holes damaged the inside and outside of Cooper's home and vehicles. Investigations around Cooper's home revealed leftover 223-caliber bullet casings, 7.62-caliber bullet casings, and 5.7-caliber bullet casings. Each of the bullet casings matched a weapon found in Defendant Evans's Mitsubishi Galant. Defendant Littlejohn's hands had five particles of gunshot residue on them.

The trial court tried Defendants Evans and Littlejohn in a joint trial in July 2024 on multiple charges relating to the 27 February 2019 drive-by shooting. The court did not join Richard Armstead in the trial. Nonetheless, Defendant Littlejohn's indictment charged him with conspiring with Armstead to discharge a weapon into Cooper's occupied property, but did not charge him with conspiring with Defendant Evans. Defendant Littlejohn moved to dismiss the charge at trial, arguing the State failed to offer evidence of a conspiracy with Armstead and recognizing the absence of Defendant Evans as a charged coconspirator. The trial court denied the motion to dismiss and instead ruled that only Armstead could be considered a coconspirator. The jury questioned the absence of Defendant Evans as a coconspirator in Defendant Littlejohn's charges during their deliberations; the trial court informed them that this omission was an "inadvertent mistake" in the charging documents.

Following a number of voluntary dismissals by the State and dismissal rulings by the trial court, the jury ultimately convicted Defendant Evans of possession of a firearm by a felon and conspiracy to commit discharging firearm into occupied property. Likewise, the jury convicted Defendant Littlejohn of conspiracy to commit discharging firearm into occupied property, two counts of injury to personal property, and injury to real property.

## II.    Analysis

Defendants Evans and Littlejohn each appeal from their convictions stemming from the drive-by shooting. We address each Defendant's arguments in turn.

## A. Defendant Evans's Appeal

Defendant Evans appeals only from his conviction for possession of a firearm by a felon. Defendant Evans contends section 14-415.1 of the North Carolina General Statutes, the statute criminalizing possession of a firearm by a felon, is "facially unconstitutional under the United States and North Carolina Constitutions" and his conviction "must be vacated" under the analysis established in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022). However, Defendant Evans also concedes "[t]his Court recently held [section] 14-415.1 is not facially unconstitutional under the *Bruen* analysis," acknowledging this Court's holding in *State v. Nanes*, 297 N.C. App. 863, 866–70, 912 S.E.2d 202, 206–09 (2025) (holding facial challenge to section 14-415.1 without merit because the statute's "regulation is within the Nation's tradition and history of disarming individuals who pose a threat

to the safety of others" and can be applied constitutionally with a "'plainly legitimate sweep'"). We are bound by the prior holding of this Court. *See In re Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 36 (1989) ("[O]ne panel of the Court of Appeals may not overrule the decision of another panel on the same question in the same case.").

Defendant Evans raises this issue in an effort to preserve it in the event our Supreme Court rules on the constitutionality of the statute. Defendant further acknowledges he failed to take actions required to preserve this issue for appellate review as is required by Rule 10 of the N.C. Rules of Appellate Procedure, and instead requests this Court invoke Rule 2 to prevent manifest injustice by reviewing his unpreserved issue on appeal. *See* N.C. R. App. P. 10 ("In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion. . . ."); N.C. R. App. P. 2 ("To prevent manifest injustice to a party . . . either court of the appellate division may . . . suspend or vary the requirements or provisions of any of these rules. . . ."). With our precedent in *Nanes* in mind, we decline to invoke Rule 2 and dismiss Defendant Evans's argument.

## B. Defendant Littlejohn's Appeal

Defendant Littlejohn appeals only from his conviction for conspiracy to commit discharging a weapon into occupied property. Defendant Littlejohn contends the trial court erred "by failing to dismiss the conspiracy charge against [him] because there was insufficient evidence to establish the required elements of conspiracy between [Defendant] Littlejohn and Armstead."

We review the trial court's denial of a motion to dismiss a criminal charge for insufficiency of the evidence *de novo*, to determine whether the State presented "substantial evidence (1) of each essential element of the offense charged" and "(2) of [the] defendant's being the perpetrator of such offense." *State v. Tucker*, 380 N.C. 234, 236–37, 867 S.E.2d 924, 927 (2022) (citation omitted). "As a general rule, a motion to dismiss should be denied if there is any evidence that tends to prove each element or reasonably conduces to each element's conclusion as a fairly logical and legitimate deduction beyond mere suspicion or conjecture." *State v. Bracey*, 388 N.C. 689, 692, 923 S.E.2d 540, 544 (2025) (citation modified). "Evidence must be viewed 'in the light most favorable to the State, giving the State the benefit of all reasonable inferences.'" *Id.* at 693, 923 S.E.2d at 544 (citation omitted).

"The crime of conspiracy is committed when two or more persons agree to perform an unlawful act." *State v. Beck*, 385 N.C. 435, 438, 894 S.E.2d 729, 732 (2023) (citation omitted). "In order to prove conspiracy, the State need not prove an express agreement; evidence tending to show a mutual, implied understanding will suffice." *State v. Morgan*, 329 N.C. 654, 658, 406 S.E.2d 833, 835 (1991) (citations omitted). It is rare that record evidence shows such direct proof of a conspiracy, and conspiracy is more often proven by the collective weight of numerous indefinite acts. *State v. Winkler*, 368 N.C. 572, 576, 780 S.E.2d 824, 827 (2015) (citation omitted). "On the other hand, while conspiracy can be proved by inferences and circumstantial evidence, it cannot be established by a mere suspicion, nor does a mere relationship

between the parties or association show a conspiracy." *State v. Brewton*, 173 N.C. App. 323, 327–28, 618 S.E.2d 850, 854–55 (2005) (citation modified).

Defendant Littlejohn contends the State's evidence was insufficient to show conspiracy because it "established no prior relationship or connection between [Defendant] Littlejohn and [] Armstead." Defendant posits that "[i]n situations where this Court has affirmed conspiracy convictions based on circumstantial evidence, illustrative cases have elements of prior communication and association among alleged co-conspirators." *See Brewton*, 173 N.C. App. at 328–29, 618 S.E.2d at 855 (holding sufficient evidence of conspiracy where the State's evidence included spoken communications assenting to completion of the crime and a prior relationship between the coconspirators); *Winkler*, 368 N.C. at 576, 780 S.E.2d at 827 (holding sufficient evidence of conspiracy where the State's evidence showed the coconspirators had a familial connection and one coconspirator mailed the other a package at an address unknown to the recipient coconspirator's probation officer, suggesting prior communication between them).

While evidence of a prior relationship and communications between coconspirators may be sufficient circumstantial evidence of an agreement for a conspiracy charge, such evidence is not an essential, elementary requirement of a conspiracy charge. Our courts have found sufficient evidence of conspiracy where the circumstances do not include prior communications or a relationship between the coconspirators but otherwise show coordination and agreement between them. "The

execution of an attack in a coordinated manner and joint flight after the attack have been held sufficient evidence to survive a motion to dismiss a conspiracy charge." *State v. Glenn*, 274 N.C. App. 325, 332, 852 S.E.2d 436, 442 (2020) (citation omitted).

For instance, in *State v. Lamb*, the defendant argued the State's evidence "showed there was no discussion of the crime by any of the men" beyond mere speculation, and the jury could "just as easily infer that the three men went to [the victim's] home without a shared plan." *State v. Lamb*, 342 N.C. 151, 155, 463 S.E.2d 189, 191 (1995). This Court disagreed, holding there was sufficient evidence of conspiracy based solely on evidence that the coconspirators traveled together to the victim's home and carried out the alleged underlying crime when they arrived. *Id.* at 155–56, 463 S.E.2d at 191; *see also State v. Abernathy*, 295 N.C. 147, 165, 244 S.E.2d 373, 385 (1978) (holding sufficient circumstantial evidence of conspiracy where evidence showed the coconspirators traveled together directly to the victim's residence where they committed the alleged underlying crime).

Here, the State presented evidence tending to show the grey Mitsubishi Galant traveled a consistent path as it approached Cooper's address, stopped there for one minute, then drove to the location where an officer stopped the vehicle. In the light most favorable to the State, the evidence showed Defendant Littlejohn and Armstead were both passengers inside the Galant throughout the incident and fled the scene of the crime together afterward. There was a gun available for use by each person in the vehicle, and residue on Defendant Littlejohn's hands showed he had recently fired

a gun. It can be inferred beyond mere suspicion a mutual, implied understanding existed between them that the purpose of traveling to Cooper's home that day was to commit a drive-by shooting into his dwelling. The trial court did not err by denying Defendant Littlejohn's motion to dismiss.

### III.   Conclusion

We decline to invoke Rule 2 and dismiss Defendant Evans's appeal for failure to preserve his argument for appellate review. We hold the trial court did not err by denying Defendant Littlejohn's motion to dismiss the criminal conspiracy charge.

DISMISSED IN PART, NO ERROR IN PART.

Judges TYSON and FLOOD concur.

Report per Rule 30(e).